THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>**[1] VICTOR CRUZ-QUINTERO,**<br><br>    Defendant. | Crim. No. 18-00425 (ADC) |

**OPINION AND ORDER**

Before the Court is Defendant Victor Cruz-Quintero's motion to dismiss the indictment. **ECF No. 112**. The government filed a response in opposition. **ECF No. 116**. For the following reasons, the motion to dismiss is **DENIED**. **ECF No. 112**.

Defendant is a former Finance Director for the Municipality of Toa Baja, Puerto Rico. He is charged with one count of theft, conversion, and misappropriation of federal funds pursuant to 18 U.S.C. § 666(a)(1)(A), and seven counts of conversion of government money and property pursuant to 18 U.S.C. § 641. **ECF No. 3**.

The Federal Rules of Criminal Procedure require an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." R. 7(c)(1). An indictment is sufficient "if it apprise[s] the defendant of the charged offense so that the defendant can prepare a defense and plead double jeopardy in any future prosecution of the

same offense." *U.S. v. Vega-Martínez*, 949 F.3d 43, 49 (1st Cir. 2020) (alteration in original) (citation and internal quotation marks omitted). An adequate indictment "may 'parrot the statutory language to describe the offense, but it must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged.'" *Id*. (quoting *U.S. v. Parigian*, 824 F.3d 5, 9 (1st Cir. 2016)) (additional citation and internal quotation marks omitted). In assessing the adequacy of an indictment, a court does "not evaluate the sufficiency of the evidence that the government might have to back up the indictment." *Id*. at 48.

> Count 1 of the indictment alleges violation of 18 U.S.C. § 666(a)(1)(A) which states,
>
> (a) Whoever, if the circumstance described in subsection (b) of this section exists--
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
> (i) is valued at $5,000 or more, and
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency;
> …
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C.A. § 666. Count 1 mirrors this statutory language, alleging,

> VICTOR CRUZ QUINTERO, the defendant herein, being an agent of the Municipality of Toa Baja, said local government receiving in the one year beginning July 1, 2014, benefits in excess of $10,000 under [Health and Human Services] HHS and [Housing and Urban Development] HUD programs, stole,

> without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied property worth at least $5,000 and under the custody and control of the Municipality of Toa Baja, that is approximately … $2,538,164.41… in HUD Section 108 Loan Guarantee Program funds.

**ECF No. 3** at 5. The indictment's narrative claims defendant used these earmarked federal funds to cover payroll and bonuses for city employees and contractors unaffiliated with the HUD and HHS programs for which the funds were intended.  **ECF No. 3** at 1-5.

Counts 2 through 8 reflect individual transactions and are charged under 18 U.S.C. § 641. **ECF No. 3** at 6. That statute states,

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof … [s]hall be fined under this title or imprisoned not more than ten years, or both ….

Similarly, the indictment alleges under counts 2 through 8 that,

> VICTOR CRUZ QUINTERO, the defendant herein, willfully and knowingly did steal, purloin, and convert to the use of another a thing of value of the United States in an amount over $1,000, that is the approximate amount identified below in federal funding from the corresponding department of the United States.

**ECF No. 3** at 6. Below this paragraph, the indictment contains a chart listing seven transactions by date, amount, and affected governmental entity. Each transaction constitutes a single count in the indictment.

The Court finds the indictment adequate. It contains sufficient information to place defendant on notice of the nature of the charges against him. It not only parrots the relevant

statutory language, but it also contains several pages of text explaining the government's theory and the specific time frame and dollar amounts in question. This presents the "essential facts" necessary to enable defendant to prepare his defense. Indeed, as addressed below, defendant has already begun to present his defense through his motion to dismiss.

Nonetheless, defendant contends that *Kelly v. U.S.*, 140 S.Ct. 1565 (2020), requires dismissal. He argues that, under *Kelly*, the government has failed to plead a valid form of "property" that was the object of his alleged deception or fraud. **ECF No. 112** at 1-2.

In *Kelly*, the primary question was whether the political motivation behind the defendants' abuse of their authority over the George Washington Bridge connecting Fort Lee, NJ with Manhattan, NY, "the busiest motor-vehicle bridge in the world," constituted property fraud on a federally funded program or entity under 18 U.S.C. §§ 1343; 666(a)(1)(A). *Kelly*, 140 S.Ct. at 1568. The Supreme Court held that it did not, explaining that the public officials' unannounced, rush-hour "realignment of the toll lanes was an exercise of regulatory power—something [the Court had] already held fails to meet the statutes' property requirement." *Id.* at 1568-69. The Court further explained that though the public officials' political motivation "to punish the mayor of Fort Lee for refusing to support the New Jersey Governor's reelection bid, … no doubt shows wrongdoing …, the federal fraud statutes at issue do not criminalize all such conduct." *Id*. at 1568. The government argued that the officials' intent was to commandeer part of the bridge, i.e., take control of its physical lanes, and to divert money from the Port Authority in the form of the wages used to pay the employees the defendants unwittingly engaged in their

Case 3:18-cr-00425-ADC   Document 127   Filed 09/01/21   Page 5 of 7

Crim. No. 18-425 (ADC)                                                                                       Page 5

"traffic study" cover story. *Id.* at 1572. The government categorized both theories as presenting "a 'species of valuable right [or] interest' that constitutes 'property' under the fraud statutes." *Id.* (citations and internal quotation marks omitted).

The Supreme Court rejected this argument, ascribing the public officials' exercise of control over the bridge's toll lanes as "a regulatory choice … not one to appropriate the government's property." *Id*. at 1572. The Court agreed, however that "a scheme to usurp a public employee's paid time is one to take the government's property," but considered it inapplicable under the facts of the case before it; the public officials' "plan never had that as an object." Rather, the Court explained, "use of Port Authority employees was incidental to—the mere cost of implementing—the sought-after regulation of the Bridge's toll lanes." *Id*.

Here, the indictment alleges defendant diverted federal funds that the city received to pay for specific HHS and HUD programs. Defendant allegedly used this earmarked federal money to cover wages and bonuses for city employees and contractors for work unrelated and unaffiliated with the HHS and HUD programs. If true, these actions deprived the city of $2.5 million of funding for HHS and HUD programs the city was entitled. This economic loss squarely fits within the usurpation of government property (money) recognized by the *Kelly* Court as meeting 18 U.S.C. § 666(a)(1)(A)'s property requirement. *Id*. at 1573. Thus, *Kelly* does not support defendant's argument.

Next, defendant asserts that Count 1 inappropriately charges "more than one means of committing the statutory offense"—by theft, conversion, and misapplication. **ECF No. 116** at 4.

He also contends that theft and conversion are mutually exclusive and cannot be charged together. **ECF No. 112** at 9. He bases these arguments on the use of the word "or" in the statute: "… embezzles, steal, obtains by fraud, **or** otherwise without authority knowingly converts to the use of any person other than the rightful owner **or** intentionally misapplies, property …." **ECF No. 112** at 7 (quoting 18 U.S.C. § 666(a)(1)(A)). The government counters, explaining that its employed method of "conjunctive pleading is not only permitted by [Federal Rule of Criminal Procedure 7(c)(1)], but it has been recognized by the Supreme Court for over one hundred years." **ECF No. 116** at 5.

The Court agrees with the government. It is "regular practice for prosecutors to charge conjunctively, in one count, the various means of committing a statutory offense." *Griffin v. U.S.*, 502 U.S. 46, 51 (1991). And, rule 7(c)(1) specifically permits an indictment to allege in a single count "that the defendant committed it by one or more specified means." Fed. R. Crim. P. 7(c)(1).

Next, defendant argues that the indictment fails to adequately plead the element of fraud in Count 1. **ECF No. 112** at 8-9. The government responds by clarifying that none of the charges are based on theories of fraud. **ECF No. 116** at 6. Accordingly, the indictment does not need to include the information pertaining to fraud that defendant asserts. The Court agrees with the government. The indictment conjunctively pleads theories of conversion, theft, and misapplication, not fraud. Omission of fraud language is of no import to the adequacy of the theories pleaded.

Defendant also asserts that application of the statute's bona fide salary exception at 18 U.S.C. § 666(c) undermines the charges against him. **ECF No. 112** at 11-13. In making this argument, he identifies several banking and payroll records that he is awaiting in discovery. *Id.* Similarly, defendant claims counts 4, 5, and 8 incorrectly allege that the HHS and HUD funds at issue could not legally be spent on city obligations both related and unrelated to the HHS and HUD programs for which the funds were earmarked. *Id.* at 13-15. Last, defendant explains that because the funds reflected in counts 2, 3, 6, and 7 were reimbursed prior to the issuance of the indictment, there was no theft, conversion, or misappropriation of those funds. *Id.* at 15-16. The Court agrees with the government's characterization of these claims as factual disputes going to the question of guilt or calculation of restitution. **ECF No. 116** at 6-9. These arguments are not appropriately before the Court at this juncture. A motion to dismiss is not a valid means for a defendant "to test the sufficiency of the evidence behind an indictment's allegations." *U.S. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011).

Accordingly, defendant's motion to dismiss the indictment is **DENIED. ECF No. 112**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 27th day of August, 2021.

                                                         **S/AIDA M. DELGADO-COLÓN**
                                                         **United States District Judge**